# COUNTY OF SAGADAHOC.

CHARLES CROOKER & *als. versus* HENRY TALLMAN.

Several persons paid for a mercantile adventure, by a draft on time, to which draft all were parties. Subsequently, by written contract, each of the whole number agreed to pay his proportion of the draft at maturity, in consideration of being entitled to an equal share of the profits. The adventure was not successful; the draft was not paid at maturity, and suit was brought by the indorsers, who had been obliged to take it up, against the acceptors. Both plaintiffs and defendants were parties to the adventure: — *Held*, that the contract was neither payment of the draft nor a discharge of the parties to it, and that the action could be maintained; also, that an action could be maintained upon the contract.

The contract is evidence of what each agreed to pay in the adventure, and may be regarded as equivalent to a receipt from the plaintiffs for their proportion of the draft, and reduces by so much the amount to be recovered by them upon it.

ON REPORT from *Nisi Prius*, APPLETON, J., presiding.

This was an action on a draft. The facts in the case are stated in the opinion of the Court.

After the evidence was in, a default *pro forma*, by consent, was entered.

If, upon the evidence, the action is maintainable, the default is to stand, and judgment is to be rendered for such sum as the plaintiffs may, upon legal principles, be entitled to recover. If not maintainable, the default is to be taken off, and judgment rendered for the defendant.

*Gilbert*, for plaintiffs.

*Randall & Tallman*, for defendant.

APPLETON, J. — This suit is upon a draft dated March 28, 1848, drawn by B. F. Sawyer upon, and accepted by, the defendant and James C. Tallman, since deceased, for the sum of nine thousand five hundred and two dollars and forty-nine

cents, on eight months, in favor of the plaintiffs, and by them indorsed. The plaintiffs having been compelled, as indorsers, to pay the draft upon its dishonor, claim to recover the amount thus paid of the defendant as acceptor.

In a few days after the date of the draft, the plaintiffs entered into the following agreement:—

"Bath, April 5, 1848.

"Whereas B. F. Sawyer, Esq. on the 28th March, 1848, drew a draft favoring Charles & W. D. Crooker and S. Swanton, 2d, on James C. Tallman and Henry Tallman for the sum of nine thousand five hundred and two dollars and forty-nine cents, on eight months, which said draft is accepted by J. C. and H. Tallman, for the purchase of two hundred and fifty bales of sheeting; now the aforesaid parties agree to equally divide the loss and gain on the said purchase, and each of them to pay one-sixth part of said draft at maturity; the said Tallmans and B. F. Sawyer being responsible, jointly and severally, for one-half part thereof."

(Signed,)            "Charles & W. D. Crooker,

"Samuel Swanton, 2d."

A similar contract was signed by James C. Tallman, Henry Tallman and B. F. Sawyer, at the same time.

Had the parties to the contract of April 5th performed their agreement, no question, such as is here presented, could have arisen. The defendant neglected or refused to pay what, by the contract, to which he had become a party, he had agreed to pay. It is not questioned that an action might have been maintained upon this contract. The inquiry here presented is whether it can likewise be maintained upon the draft to which this contract relates.

The contract of April 5 is neither a payment nor a discharge of the parties to the draft. It is a new and subsequent agreement between different parties as to the payment of the draft. The parties to a draft are the payee, the drawer and acceptor. The contract, between the payee and the drawer, and between the payee and the acceptor, are several and distinct. The contract of April 5 is between the

payees on the one and the drawer and acceptors on the other side. It is, substantially, a joint and several promise on the part of the payees to pay, at its maturity, one half of the draft, in consideration of receiving one-half of the expected profits of the sheeting venture. It is evidence which shows that the plaintiffs have no claim upon the defendants for one-half of the amount they have paid. It may be considered as a receipt of half of the funds to meet the draft. To avoid circuity of action, this amount is to be allowed in reduction of the plaintiff's claim, instead of compelling the defendant to resort to a suit upon this contract to enforce from the plaintiffs the payment of their half. *Carr* v. *Stephens*, 9 Barn. & Cress. 491.

But the plaintiffs have received funds to a very considerable amount, which are first to be applied in reduction of the amount due upon the draft. They received from the sales of the sheetings, which came into their hands and were disposed of by them, about one thousand dollars. There was likewise received the further sum of four hundred dollars, or thereabouts, from the sale of the equity of the Malden farm. The precise sums are not definitely stated, but, when ascertained, they must be appropriated in discharge of the draft.

A portion of the sheetings, for which the draft was given, was exchanged for a house on Cherry street, the title of which was conveyed to the plaintiffs as security for their liability. The plaintiffs, however, subsequently wishing to raise money on the house, re-conveyed the same to B. F. Sawyer and J. C. Tallman, who gave their note for $2250, and mortgage to secure the same, to one Perkins, the agent of the plaintiffs, by whom the same was negotiated. It seems probable, that from this negotiation the plaintiffs derived no benefit. But Perkins was their agent and not the agent of the defendant, and they must therefore suffer for his negligence or misconduct. The plaintiffs, from the evidence, seem fully to have recognized the justice of this liability, and to have promised to account for the same. This sum is to be allowed

upon the draft. After these deductions are made, the plaintiffs are entitled to recover one-half of the balance remaining.

The equity of redemption of the Cherry street house is in the plaintiffs, which they hold in trust. But they were under no obligation to appropriate their own funds to its redemption, without aid from their associates. There is no reason why they should account for more than they have received, or might, in the exercise of due diligence, have received from the property.

The defendant is to be defaulted and to be heard in damages. *Defendant defaulted.*

TENNEY, C. J., concurred. — RICE, J., dissented.